# THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 77

APRIL TERM, A.D. 2026

July 14, 2026

CHRISTOPHER ALLEN CAMPBELL,

Appellant
(Defendant),

v.

S-25-0286

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Uinta County*
*The Honorable James C. Kaste, Judge*

*Representing Appellant:*

*Office of Public Defender: Patricia L. Bennett, State Public Defender;\* Kirk A. Morgan, Chief Appellate Counsel; Sean H. Barrett, Senior Assistant Appellate Counsel. Argument by Mr. Barrett.*

*Representing Appellee:*

*Keith G. Kautz, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Leanne J. Johnston, Assistant Attorney General. Argument by Ms. Johnston.*

*\*An Order Substituting Patricia L. Bennett for Brandon Booth was entered on July 1, 2026.*

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]    Christopher Allen Campbell entered a conditional no contest plea to one count of theft, and conditional guilty pleas to three counts of possession of a controlled substance with intent to deliver, one count of possession of forgery devices, and one count of possession of burglar's tools.  On appeal, Mr. Campbell asserts the district court erred when it denied his motion to suppress the evidence found during the search of his residence.  He asserts the affidavit in support of the warrant did not demonstrate probable cause to support the search.  We affirm.

## ISSUE

[¶2]    Mr. Campbell raises a single issue:

> Whether the district court erred in finding the affidavit demonstrated sufficient probable cause authorizing a search of Appellant's residence?

## FACTS

[¶3]    On December 20, 2024, Deputy Kerby Barker of the Uinta County Sheriff's Office went to investigate a report of a U-Haul that had been abandoned at Narrows Reservoir.  When he arrived on the scene, Deputy Barker found the U-Haul with its hood up and the battery removed from the engine compartment.  The U-Haul had an Arizona registration, and Deputy Barker learned the vehicle had been reported stolen.  The U-Haul had been rented to Demetric Matlock, and it was due to be returned almost a month earlier on November 27, 2024.

[¶4]    Evanston Police Officer Zach Marler responded to the scene to assist Deputy Barker with the investigation.  While conducting a search, Officer Marler located three receipts in the cab of the U-Haul.  Officer Marler showed Deputy Barker videos he had previously taken of a U-Haul truck parked at a residence located at 133 2nd Avenue, in Evanston, Wyoming, which he had been surveilling as part of a separate investigation.  The U-Haul depicted in the videos had the same picture on the right side as the one located at Narrows Reservoir.

[¶5]    After reviewing the receipts Officer Marler collected from the stolen U-Haul, Deputy Barker went to two of the stores identified on those receipts to review their surveillance footage.  He subsequently learned a male, later identified as Jesse Padilla, made the purchases that were tied to the receipts found in the U-Haul.  Officer Marler told Deputy Barker that Jesse Padilla was frequently staying at 133 2nd Avenue, if not living there.

1

[¶6]    Deputy Barker obtained information from the Uinta County Map Server and contacted the record owner of 133 2nd Avenue.  The owner informed Deputy Barker that he had recently rented the home to Christopher and Amanda Campbell, who had just moved to the area from Arizona and signed a six-month lease on December 8, 2024.  Deputy Barker learned from Officer Marler that he had recently been in contact with the Campbells regarding shoplifting from Walmart.  Deputy Barker also learned from law enforcement databases both Mr. and Mrs. Cambell had extensive criminal histories that included offenses involving theft, identity theft, forgery, auto burglary, and credit card theft.

[¶7]    Deputy Barker applied for and was granted a search warrant for 133 2nd Avenue to look for credit cards, identifications, and receipts related to the stolen U-Haul.  While executing the search warrant, officers located suspected marijuana and heroin.  They also observed guns and ammunition in plain view in the living room and one of the bedrooms.  The officers stopped the search and applied for a second search warrant for the illegal substances not covered by the initial warrant.

[¶8]    During the second search of the residence, officers located a black bag containing a significant amount of suspected drugs including methamphetamine, heroin, fentanyl, codeine, and other substances they could not identify in the field.  The officers also discovered several guns and assorted ammunition, a set of 10 keys that could be used to break into vehicles, and a plastic tote with items used to make counterfeit currency.  On the outside of the residence, the officers located a blue Honda motorcycle with its vehicle identification number (VIN) scratched off, and they discovered the VIN on the Toyota Tundra registered in Mrs. Campbell's name in Arizona did not match the VIN on the registration.  Officers learned the Toyota Tundra had been reported stolen in Scottsdale, Arizona.

[¶9]    The State charged Mr. Campbell with twelve counts: Count I – theft (U-Haul); Count II – possession of a controlled substance with intent to deliver – methamphetamine; Count III – possession of a controlled substance – methamphetamine; Count IV – possession of a controlled substance with intent to deliver – fentanyl; Count V – possession of a controlled substance – fentanyl; Count VI – possession of a controlled substance with intent to deliver –heroin; Count VII-- possession of a controlled substance – heroin; Count VIII – alteration of vehicle identification numbers; Count IX – possession of forgery devices; Count X – possession of burglar's tools; Count XI – possession of a controlled substance – marijuana; and Count XII – possession of a controlled substance – codeine. Mr. Campbell filed a motion to suppress the evidence seized from his residence, claiming the affidavit in support of the initial search warrant was deficient because it contained conclusory statements and unexplained suspicions, and there was little information contained therein that would give rise to an inference that evidence relating to the stolen U-Haul would be found at his residence.  He also asserted the second warrant was invalid as "fruits of the poisonous tree."  After holding a hearing, the district court denied Mr. Campbell's motion to suppress.

[¶10]  After the district court denied his motion, Mr. Campbell and the State entered into a conditional plea agreement.  Mr. Campbell agreed to plead no contest to Count I (theft) and guilty to Count II (possession of a controlled substance with intent to deliver, methamphetamine), Count IV (possession of a controlled substance with intent to deliver, fentanyl), Count VI (possession of a controlled substance with intent to deliver, heroin), Count IX (possession of forgery devices), and Count X (possession of burglar's tools).  The State consented to dismiss the remaining charges and jointly recommend a sentence of 4–9 years in prison on Counts I, II, IV, and VI, and a sentence of 18–36 months in prison on Counts IX and X.  The parties agreed the sentences in Counts I, II, IV, and VI would run concurrent with each other, but consecutive to the sentences in Count IX and X, which would also be served concurrently with each other.  Mr. Campbell reserved his right to appeal the district court's ruling denying his motion to suppress.  The district court sentenced Mr. Campbell in accordance with the plea agreement.  This appeal timely followed.

## DISCUSSION

[¶11]  Mr. Campbell argues the district court erred when it denied his motion to suppress evidence after finding the affidavit in support of the initial search warrant established probable cause to believe evidence related to the stolen U-Haul could be found at his residence.  He asserts the affidavit contained conclusory statements and failed to identify the basis for the information included therein.  If we find the initial search warrant was defective, Mr. Campbell renews his argument the evidence seized pursuant to the second search warrant must also be suppressed as fruit of the poisonous tree.

[¶12]  When evaluating the sufficiency of an affidavit supporting a search warrant, we apply a de novo standard of review. *Kreusel v. State*, 2023 WY 9, ¶ 12, 523 P.3d 312, 316 (Wyo. 2023) (citing *TJS v. State*, 2005 WY 68, ¶ 9, 113 P.3d 1054, 1056–57 (Wyo. 2005)).  Because Article 1, § 4 of the Wyoming Constitution requires search warrants to be supported by an affidavit, "we have held that sufficient factual support for issuance of the warrant must be found within the affidavit.  The affidavit must supply the issuing [judicial] officer with sufficient information to make an independent judgment that probable cause exists for the warrant." *Id.* at ¶ 14, 523 P.3d at 316 (quoting *Bouch v. State*, 2006 WY 122, ¶ 13, 143 P.3d 643, 648 (Wyo. 2006)).  An affiant's "bare conclusions" are not enough to establish probable cause to search. *Id.* (citing *Bouch*, ¶ 13, 143 P.3d at 648; *Snell v. State*, 2014 WY 46, ¶ 13, 322 P.3d 38, 42 (Wyo. 2014)).  The affiant must "adequately articulate the factual basis for their request." *Hixson v. State*, 2001 WY 99, ¶ 7, 33 P.3d 154, 157 (Wyo. 2001) (quoting *Cordova v. State,* 2001 WY 96, ¶ 14, 33 P.3d 142, 148 (Wyo. 2001)), *abrogated by TJS*, 2005 WY 68, 113 P.3d at 1054.

[¶13]  "Probable cause to justify the issuance of a search warrant requires a twofold finding." *Kreusel*, 2023 WY 9, ¶ 15, 523 P.3d at 316 (quoting *Snell*, 2014 WY 46, ¶ 16,

3

322 P.3d at 44).  First, the affidavit must contain sufficient facts "to cause a reasonably cautious or prudent person" to believe a crime had been committed or was being committed. *Id.*, 523 P.3d at 316–17 (citation omitted).  Second, the affidavit must show "the fruits of the crime or the evidence thereof" are in the place to be searched. *Id.*, 523 P.3d at 317 (citation omitted).  To satisfy the second prong, there must be "a 'nexus' between the contraband to be seized or the suspected criminal activity and the place to be searched." *Id.* (quoting *Bouch*, 2006 WY 122, ¶ 15, 143 P.3d at 648).

[¶14]  "When reviewing the sufficiency of a search warrant affidavit on appeal, we 'consider the affidavit in its totality, interpreting it in a realistic and common[-]sense manner to determine if it presents probable cause supporting the issuance of the warrant.'" *Id.* at ¶ 16, 523 P.3d at 317 (quoting *Fosen v. State*, 2017 WY 82, ¶ 13, 399 P.3d 613, 616 (Wyo. 2017)).  We begin with the presumption the warrant and supporting affidavit are valid because the law has a "strong preference" for officers obtaining search warrants instead of engaging in warrantless searches. *Id.*

[¶15]  The affidavit submitted by Deputy Barker in support of the initial search warrant reads as follows:

Affidavit:
I, Kerby Barker, being duly sworn, according to law, deposes and states as follows:

A.  That your Affiant has been employed by the am [sic] a Uinta County Deputy Sheriff, and I have been so employed since December 15, 2008.

B.  COMES NOW, your Affiant, Kerby Barker, being of lawful age, hereby deposes and states as follows.

C.  On December 21, 2024 I was told by the prior shift that there had been a U-Haul truck reported with it's [sic] hood up out at the Narrows Reservoir. The previous shift had not made it out to check on the truck.

D.  Upon arrival I observed the U-Haul truck with a 16' box off the east side of the road about half way down the road to the dam at the Narrows Reservoir. The truck bore Arizona Registration AE66762. The registration was ran through NCIC, and returned stolen. The truck had reportedly been rented by a Demetric Matlock, and was due to be turned back in on of November 27/2024. [sic]  The truck had never been returned. The truck had

4

a VIN of 1FDXE4FS0DDA40170. The Phoenix Police Department case # is 202400001857867.

E. Evanston Police Officer Marler located 3 receipts in the truck that were collected as evidence. The last 4 digits of the Visa used on the receipts collected were 6368. Surveillance footage shows Jesse Padilla using that card at Smokeology in Evanston, WY and at Michael's in Riverdale, Utah.

F. While out with the truck, Officer Marler showed me video's [sic] he had taken of a U-Haul truck that had been parked at 133 2nd Ave. The truck had the same picture on the right side of the truck that the Stolen U-Haul had on it. Officer Marler had been watching the house due to a separate investigation. Officer Marler stated he had contact with Christopher Campbell, and Amanda Campbell just recently as they had been shoplifting at Walmart. Officer Marler stated the Campbell's [sic] had just moved to Evanston, WY from Arizona.

G. Officer Marler also provided Jesse Padilla has been staying at 133 2nd Avenue frequently, if not living there.

H. A criminal history was ran [sic] on Christopher Campbell, and showed an extensive history including theft, burglary, auto burglary, and Robbery charges. A criminal history was ran [sic] on Amanda Campbell. Amanda did not show a criminal history under that name, but when checked by her social security number Amanda Axley, had a criminal history that included Forgery, Identity theft, credit card theft, and computer tampering or fraud.

I. I placed a call to the property owner at 133 2nd Ave identified as [Landlord] by the Uinta County map server. [Landlord] stated that he had recently rented the house at 133 2nd Ave to Christopher, and Amanda Campbell. [Landlord] reported the couple had moved here from Arizona. [Landlord] was not aware of anyone else living at the residence. [Landlord] had

5

Campbell's [sic] sign a 6 month contract on December 8, 2024. [Landlord] had not heard of Demetric Matlock, and had not met anyone by that name.

J. I requested a copy of the Phoenix police report of the truck being stolen, I was also provided with the U-Haul rental paperwork. The truck had been reserved utilizing a Visa credit card ending with 2831. U-Haul was able to provide an expiration date for that card of 10/28. The truck was actually rented using Visa credit card ending in 7373. U-Haul was able to provide an expiration date for that card of 05/28.

K. After driving by the residence at 133 2nd Ave I observed a 2017 Toyota Tundra with an Arizona Temporary registration of 51295AR which returned to Amanda Campbell. The tires on the truck appeared to be the same type of tire tracks observed at the site of the U-Haul truck when it was located.

L. Amanda Campbell has the following vehicles registered to her that have been parked in front of the residence on the street: A 2017 Toyota Tundra truck with a Temporary Arizona registration of 51295AR, and a VIN of 5TFEW5F19HX225716, and a Volkswagen Jetta car with a Temporary Arizona registration of 47990AR, and a VIN of 3VWRZ71K49M012701.

M. I am searching for items including, but not limited to U-Haul rental paperwork, Visa Credit Card with the last 4 digits of 6368 utilized by Jesse Padilla, Visa Credit Card with the last 4 digits of 7373 with an expiration date of 05/28, Visa Credit Card with the last 4 digits of 2831 with an expiration date of 10/28, Keys to the U-Haul truck, billing statements to the 3 listed credit cards, and cards or identifications belonging to Demetric Matlock.

N. Due to the ease of transportation of receipts, keys, credit cards, billing statements, and ID cards, it would be very easy for any of those items to be transferred

6

from the residence to a vehicle, or one vehicle to another.

Further the Affiant Sayeth not.

/s/
Deputy Kerby Barker

SUBSCRIBED and SWORN to before me on this 6th day of January 2025.

Notary Public
(Seal)

REVIEWED for probable cause by ____/s/____ on ___6___ day of __January__, 2025, at __1:50__ o'clock _p._ m.

/s/

Circuit Court Judge

[¶16]  Mr. Campbell concedes the affidavit meets the first prong of the probable cause test and it contained sufficient facts to allow the judicial officer to find the U-Haul had been stolen.  However, he alleges the affidavit failed to satisfy the second prong because it fell short of demonstrating evidence related to the theft of the U-Haul could be located at his residence.  We disagree.

[¶17]  In his motion to suppress and again in his appellate brief, Mr. Campbell looks at each paragraph of the affidavit in isolation and asks whether that paragraph sufficiently identifies the basis for the information included therein.  Mr. Campbell's paragraph-by-paragraph analysis is inconsistent with the "totality of the circumstances approach" we apply when determining whether the affidavit establishes probable cause to issue the warrant. *Abeyta v. State*, 2007 WY 142, ¶ 12, 167 P.3d 1, 7 (Wyo. 2007) (citation omitted). "[U]nder the totality of circumstances approach, the warrant-issuing judicial officer as well as the courts reviewing the judicial officer's probable cause determination must consider all of the material evidence together, and not in piecemeal fashion." *Rohda v. State*, 2006 WY 120, ¶ 11, 142 P.3d 1155, 1164 (Wyo. 2006).  A "totality of the circumstances" analysis requires the judicial officer "to make a practical, common[-]sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at ¶ 5, 142 P.3d at 1158–59 (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983)).

7

[¶18]   When reading the affidavit as a whole, the primary source of the information was Deputy Barker, who was the officer applying for the warrant and signed the application under oath.   Some of the information in the affidavit came from Deputy Barker's own "sense perception, that is, what he saw, heard, or smelled firsthand." *Id.* at ¶ 7, 142 P.3d at 1159.   Deputy Barker set forth the following information that was gained from his personal observations: the stolen U-Haul had an Arizona registration; the picture on the side of the stolen U-Haul appeared to be the same as the one in the video of the U-Haul that had recently been outside the Campbells' residence; Mrs. Campbell's truck had an Arizona registration; and the tire tracks at the scene appeared to match the tires on Mrs. Campbell's Toyota Tundra.   The judicial officer could rely on Deputy Barker's oath to establish the veracity and reliability of this information. *Id.*

[¶19]   Officer Marler and the Arizona Police Department both relayed information to Deputy Barker, which he included in the affidavit for the search warrant.

> When the secondary source person is a law enforcement officer, courts hold that such an officer is presumed truthful or reliable and, therefore, no special showing of veracity or reliability is necessary. That rule applies not only to law enforcement officers in the same organization as the affiant, but also to those in different organizations at local, state, or federal levels.

*Id*. at ¶ 8, 142 P.3d at 1159–60.   The judicial officer could presume the information provided by Officer Marler and the Arizona Police Department was true and reliable. *Id.* This information established: the U-Haul had been stolen; the U-Haul had been rented under the name Demetric Matlock, using a credit card ending in 7373; a U-Haul with the same picture as the stolen U-Haul had recently been seen outside the Campbells' residence; Jesse Padilla, who had been connected to the receipts found in the stolen U-Haul, had recently and frequently been staying at the Campbells' residence, if not living there; and the Campbells had recently moved from Arizona.   Deputy Barker also learned from law enforcement databases the Campbells had extensive criminal histories, which included charges of burglary, theft, forgery, identity theft, credit card theft, and auto burglary.

[¶20]   Mr. Campbell asserts the affidavit was written in such a way the judicial officer could not determine the "foundation or source of information . . . , who provided it, [or] when it was provided . . . ."   He alleges the affidavit does not detail whether Deputy Barker gleaned the information from speaking with Officer Marler, reading a report, or helping him with the search.   Assuming this information was necessary for the judicial officer to determine probable cause, we disagree with Mr. Campbell's assertion this information is absent from the affidavit.   We have noted the facts that support an officer's conclusions are often "self-evident from the affidavit, as when an officer states that he stopped a vehicle,

approached the driver's door, and spoke with the defendant . . . ." *Snell*, 2014 WY 46, ¶ 18, 322 P.3d at 44. In this case, the affidavit says Officer Marler located the receipts in the U-Haul, which means he was present at Narrows Reservoir. Further, the affidavit says Officer Marler showed Deputy Barker the videos he had taken of the U-Haul outside of the Campbells' residence. This must have been an in-person contact. Further, the affidavit says Officer Marler stated he recently contacted the Campbells, and he "provided" Jesse Padilla had been staying at their residence. The common sense reading of the affidavit indicates Deputy Barker obtained this information from speaking to Officer Marler, who had direct knowledge from his own "sense perceptions." Similarly, the affidavit indicates what information Deputy Barker learned from reading the Arizona Police Report or from checking law enforcement databases. Contrary to Mr. Campbell's assertion, the information is not stated in a way that prevented the judicial officer from "testing reliability, of the 'who, what, where or when' of the statement[s]."

[¶21] When read as a whole, the affidavit set forth the following facts for the judicial officer to consider: a stolen U-Haul with an Arizona Registration had been abandoned at Narrows Reservoir; receipts found in that stolen U-Haul linked back to Jesse Padilla; Jesse Padilla had been recently and frequently staying at the Campbells' residence; a U-Haul with the same picture on the side as the stolen U-Haul had recently been observed outside the Campbells' residence; the Campbells had recently moved to Evanston from Arizona; Mrs. Campbell's vehicle had an Arizona registration; the tires on Mrs. Campbell's vehicle appeared to match tire tracks left at the scene of the stolen U-Haul; and the Campbells had criminal histories that included using fraudulent credit cards and auto burglary. These facts establish a nexus between the items sought (evidence pertaining to the stolen U-Haul) and the place to be searched (the Campbells' residence). Considering the totality of the circumstances, the judicial officer had a substantial basis for his common-sense determination that there was a fair probability that evidence related to the stolen U-Haul would be found at the Campbells' residence. The district court did not err when it found the affidavit was sufficient and denied Mr. Campbell's motion to suppress.

## CONCLUSION

[¶22] The affidavit contained sufficient information from which the issuing judicial officer could find there was probable cause to believe there was a fair probability evidence related to the stolen U-Haul could be found at Mr. Campbell's residence. The district court did not err when it denied the motion to suppress. Affirmed.